Good morning, counsel. We're going to move to case number three of the morning. This is Platinum Supplemental v. Guarantee Trust, appeal number 20-1906. We'll begin, Mr. McKnight, with you. Good morning, your honors. May it please the court, my name is Neil McKnight. I represent the appellant Guarantee Trust Life Insurance Company, which I'm going to refer to as GTL. I think there are some things that are in dispute in this case, but I think there are a lot of things that actually we are in agreement about, and I think this is a case about contract interpretation and the construction of a contract under Illinois law, and therefore the district court's rulings are subject to a de novo review. And just going through the sort of Illinois standards, which are similar to standards on interpretation and construction of contracts around the country, you know, when the agreement is explicit and clear, the court has to enforce it as written, and the meaning and intention has to be assistance of parole evidence. And then if the contract is ambiguous, and there's a question of fact, the trier fact can only consider parole evidence in determining the intent of the parties. And I don't think there's any argument about the fact that releases are considered contracts, and the state of the law, and I think both parties agree, is that the intention of the parties controls the scope and effect of the release. And again, intent is determined from the instrument in light of the circumstances of the transaction. So I'm going to focus my arguments today with respect to the attorney's fee provision, which I think is the bulk of the argument that's been presented to the court. And the language of that agreement is that an award must be reasonably proportionate to the ultimate release secured by the prevailing party. And one of the issues that's presented by this is, what did the district court do to make that determination? And what it did is, first it made a factual determination under the agreement that the amount in controversy was the $73,000, and then the next issue it presented was, what constitutes a reasonably proportionate to the ultimate relief secured by the prevailing party? And again, the district court made a fact determination saying the ultimate relief by the prevailing party was $73,000. And then simultaneously, the district court said, look, I'm confused. And it acknowledged this in its opinion, essentially saying, I'm not sure what reasonably proportionate means. And so what it did is, in order to make that determination, it went forward and looked at a number of sources of law, and it couldn't find anything in Illinois law that it found acceptable. The court didn't. And so it decided to go to the Prison Litigation Reform Act as a touchstone to make a determination as to what the parties intended by reasonably proportionate to the ultimate relief secured. And under the circumstances, I can assure the court there's no evidence presented to the courts that these two parties ever considered the Prison Litigation Reform Act as an element of their contract. And so under Illinois law, the court, if there's some ambiguity, and it appears to me on the face of the opinion for the motion for summary judgment, the court did find an ambiguity. And so then it decided to go to another source of information and make the determination of what these parties intended, and it used the Prison Litigation Reform Act. Under Illinois law, that's improper. The district court should not have done that, and it effectively deprived the defendant, GTL, in this situation of the opportunity for a trial on the issues of what the parties intended by the meaning of this provision. Mr. McKnight, the figure of $72,296.73, which is the sum of the $55,000 paid to settle the Grisham claim and the $17,296.73 paid to defend the Grisham claim, that's not so much your client's beef as is the proportionate analysis. Is that correct? I think that's right. I think that the amount that I would look at this matter, and as we said in the briefs, I think proportionate has a meaning. We don't have to go to the Prison Reform Litigation Act to make a determination of what proportionate means. Proportionate means one-to-one. If you look and see something's proportionate, we provided these issues in the court. We provided common sense sort of layman's understanding of what these terms mean, and the court decided that it meant something different because it referred to a federal statute, which there is no evidence that any party ever considered when drafting this agreement. And so what the court did is it substituted its decision-making and its sources of information to create a situation where it's decided that the intent is reflected through essentially a statute, which we've seen. There's opportunities to do that because we want to encourage people to be compensated for slights under these various statutes, and that includes a number of federal and state statutes, but that's not the situation here. Mr. McKnight, don't you think you're risking a little overstatement as to the approach Judge Dow took? He never thought that this was prison civil rights litigation. He recognized fully that this is an insurance dispute. It's a contract dispute. And what he did is he looked broadly in the law for some kind of point of reference to construe and give meaning to the contract provision that's at issue. And he found a statute. It happens to involve prison litigation where similar terminology is used. And then he came up with an approximation. You say one-to-one. He said, well, you know, it can be a little under one. It can be a little over one. I land at 1.5. I've got a congressional marker for me. Isn't that a little bit fairer description of what the district judge did? Well, I don't think so in light of the fact that the court understood that Illinois law applied and that under the circumstances, Judge Dow, when he wrote his opinion... Well, sure, but he looked at Illinois law, and he didn't find a definition in Illinois law, so then he looked at federal law. Agreed. And my point is, but he also reflected in the actual opinion that he wrote with respect to the granting of fees, he specifically stated, look, you haven't provided me guidance either in the agreement or with respect to the evidence that's been presented, which would be required as a common law action on a contract in Illinois as to what reasonably proportionate to the ultimate award of relief is. That's an issue that's left for the trier of fact and shouldn't be decided on a motion for summary judgment. He essentially picked... And I understand what he did. He picked that out of thin air, but I think it also goes back to the issue of his original... Why do you say thin air? Because it has no rational relationship to the intention of the parties when they drafted this complaint. And what is the it? The Prison Litigation Reform Act? Yeah, the calculation of proportionality with respect to the determination through the Prison Litigation Reform Act. So if we wrote an opinion that told Judge Dow that, Judge, you've confused something. You've confused prisoner of civil rights litigation with insurance litigation. He would think we've affirmatively lost our minds. No, I don't think that that's what I'm asking you to do. What I'm asking the court to do is remand the matter back for determination as to what the parties intended by the meaning of reasonably proportional to the ultimate award of relief because the parties intended to do that. And I think what's happened is he's looked to a source of law, which no party in this case would have ever considered when drafting these agreements. Mr. McKnight, if we did remand, though, wouldn't we run into parole evidence problems? Well, I think if you remand, there has to be a specific finding that the contract term is ambiguous. So that would be the requirement that you would go back and have a remand for the purposes of determining through the intentions of the parties as expressed in some kind of form of testimony that that's what was intended. And so I think under the circumstances, based upon the order that was entered by Judge Dow and based on his rulings, he thought the term was ambiguous as well. Would you like to reserve the remainder of your time? I do. Thank you, Mr. McKnight. Mr. Shannon, we'll turn to you. Good morning. May it please the court. I would agree with Mr. McKnight that this is a case involving contract interpretation, but obviously I think our agreements would probably end there. First, I wanted to address the settlement agreement at issue. As you have no doubt seen from the papers, this is a long-running dispute between two business entities, and it stems mainly from a settlement agreement entered in 2017 to resolve a dispute over whether Platinum was properly training and supervising its independent agents to go out and solicit and sell GTL's products. That claim, the claim asserted in Cook County and then compelled to arbitration, was not limited to any specific allegation of one particular solicitation. It had to do with Platinum's training, supervision, and guidance of their independent agents and making sure that they were fulfilling contractual responsibilities and applicable law in soliciting those policies. The settlement agreement was entered into in February of 2017, and it resolved all of those claims, the general claims made. And critically, at that time, two and a half months prior, Mr. Grisham in Missouri had sued GTL. Nothing happened between the date that suit was filed on December 8, 2016, and the date of the settlement agreement on December 8, 2016, and the date of the settlement agreement on December 8, 2016. So nothing had changed GTL's knowledge of anything going on with that claim. So GTL was aware of what he was claiming. Mr. Shannon, let me ask you a question about that. What procedural steps would be necessary to file the third-party indemnification complaint in the Cook County litigation? So, Your Honor, if they could have filed it in the Cook County litigation, then it would have been compelled to the arbitration that was ongoing. Conversely, they could have brought the claim, sought to amend it within the arbitration, and brought those claims as part of the arbitration. Critically, what happened here is the, not to make this more complex, but there was another settlement agreement in 2015 between the parties that specifically carved out future claims that Platinum was not properly training and supervising their independent agents to go out and sell these policies. The other option GTL had then, Your Honor, was to say, okay, we have just been made aware of this new claim in Missouri on December 8, 2016, from Mr. Grisham. This is not, we haven't had the opportunity to litigate that here. We previously excluded certain matters from our 2015 agreement. We're going to go ahead and do that here as well. But they didn't do that. And in fact, they took the exact opposite tact, which is both parties agreed to a provision that said section 10 of the 2015 agreement, which allowed GTL to make these claims in the future, is hereby terminated. And as of that time, in February 28, 2017, GTL was no longer, excuse me, Platinum was no longer selling the GTL policies. So the circumstances of the agreement, the plain text of the agreement made clear that the parties understood they were resolving any dispute over whether Platinum had properly trained, supervised their agents to solicit these policies in accordance with GTL's requirements as well as applicable law. And can you, can you explain at that juncture, when the Eastern District of Missouri litigation, that claim should have been brought in, you say it should have been brought in, is, is the, is that in litigation at that point before Cook County? Has that morphed into an arbitration? What's the status of that litigation that you say the third party complaint should have been joined with? So, Your Honor, what, Mr. Grisham sued GTL in the Eastern District of Missouri. Platinum was not a party to that case. And the allegation was that GTL improperly denied coverage for his claim and improperly rescinded the policy that was issued to him. Pursuant to the settlement agreement of the parties and pursuant to their agreements, any claim that GTL had against Platinum arising out of Mr. Grisham's allegations should have been brought as part of the arbitration, should have been brought in that original, should have been brought in the Cook County action, which had been compelled to arbitration. So it should have been part of that arbitration. What's important though, is that they had knowledge of the claim by the reason, the fact that it was brought against them in the Eastern District of Missouri. We do not believe that GTL should have brought Platinum into the case in the Eastern District of Missouri. Actually, when they did do that, Platinum then had to vindicate its rights under the settlement agreement by moving the court, the Eastern District of Missouri, to transfer that matter to the Northern District of Illinois, which it was successful in doing. Mr. Shannon, regardless of whether they could have added the Grisham matter to the Cook County litigation or the Cook County arbitration, or however they may have gone about doing that, was there anything that prevented him from injecting the Grisham matter into the settlement discussions in the negotiation or the settlement compensation? No, Your Honor. Not at all. And that's one of the points that we were making here, is at the time that they entered into the settlement negotiations, GTL was aware of the claims being made by Mr. Grisham. Further, they had asserted broad claims that Platinum had not been properly supervising their agents and soliciting the policy. So when they were settling these broad claims that Platinum had failed, not in one instance, but in many instances across the country, to supervise and train their agents, they were aware of that and GTL could have included whatever amounts were being claimed as part of that agreement, but they didn't do so. What's your response to Mr. McKnight's point on the, hey, let's have a jury trial over the meaning of the attorney's fees provision? Well, Your Honor, I disagree that that is an ambiguous provision. What the settlement agreement provides is that prevailing party, which there's no dispute Platinum is, is entitled to reasonable attorney's fees. Now, that's a common contract term. Judge Dow determined that the $210,000 in attorney's fees Platinum is presented were reasonable. What makes this different is there's a mandatory provision saying that any attorney's fees must be reasonably proportional to the relief secured. Now, in Platinum's view, the relief secured was not only in avoiding the indemnification and roughly $72,000, it was also vindicating its rights under the settlement agreement and precluding these types of actions to be brought against them by a company that sued Platinum many times. But it's not, it's not ambiguous because Illinois law has already determined that proportionality can be one of the eight factors considered. Judge Dow, all he did was look to the for a determination of what a percentage would be and has been accepted by courts as reasonably proportional. Now, again, Your Honor, I would say in Platinum's view, we didn't agree that that $72,000 was the only relief Platinum secured, but we also recognize that Judge Dow's determination on an issue of awarding attorney's fees, and this is critical because this is not an interpretation of a contract. What he's doing is he's awarding attorney's fees is subject to an abuse of discretion standard. And district courts have wide discretion in determining the appropriate amount of attorney's fees and costs, and that shouldn't be disturbed absent an abuse of discretion. And I don't believe there's, you know, there's any legitimate argument that Judge Dow looking to the, excuse me, the Prison Litigation Reform Act as a basis to say, okay, what have other courts, what have other, you know, legislative bodies determined is a proportionate amount was an abuse of discretion. I believe he did a reasonable job in determining what Platinum was entitled to based on the contract terms. And I just want to focus kind of on that point for a second because in GTL's brief, they cite to a number of cases where they talk about attorney's fees being you know, subject to a de novo review. But those cases are different. Those cases involve contract interpretation. For example, one of them was a determination of whether a party was a prevailing party or not under a contractual provision saying that a prevailing party is entitled to. Well, that's not the case here. GTL doesn't dispute that Platinum was the prevailing party. For example, another case was where a attorney had sued one of its clients searching or trying to get its fees back that hadn't been paid that were owed. Well, that's not the case here either. We're not trying to get attorney's fees that were incurred and not paid to my firm. We're trying to get the attorney's fees that we are contractually entitled to pursuant to the settlement agreement that were negotiated at arm's length between two parties after a litigation that had gone on for over a year. Significant discovery had been disclosed. And GTL was aware of this claim, had the opportunity to consider it when it was negotiating its agreement, and it should be held to the terms of the agreement it entered into. And unless the court has any other questions, I'll rest at this time. Thank you, Mr. Shannon. Mr. McKnight, we'll go back to you for rebuttal. Yeah, the provision that we're talking about here has two components. It says, awarded its reasonable costs and attorney's fees. And then the last portion of the provision says, but such an award must be reasonably proportionate to the ultimate relief secured by the prevailing party. The determination as to what reasonable costs and attorney's fees we acknowledge is something that is subject to an abusive discretion review. But the interpretation of the following term is subject, meaning the limitation term, is subject to de novo review. And that's the interpretation of the contract, which also takes it outside the provisions of Rule 54, where there's substantive law that has to be determined arising out of the determination of fees. And Judge Dow, when he made his jurisdictional ruling on October 31st, 2018, specifically said he's going to consider the attorney's fees a component part of the damages because he considered that as far as the jurisdictional limit, giving him diversity jurisdiction in the case. So all we've had here is presented is evidence that was presented in a Rule 54 petition using a lodestar methodology, and there hasn't been anything else that's been provided regarding the determination of the limits. And Judge Dow understandably felt that it was ambiguous. And for that reason, the case should be remanded on those issues. Thank you. Thank you, Mr. McKnight. Thank you, Mr. Shannon. The case will be taken under advisement.